# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2013 WY 148

*October Term, A.D. 2013*

*December 4, 2013*

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

WILLIAM D. BAGLEY, WSB#4-0956,

Respondent.

D-13-0007

## ORDER SUSPENDING ATTORNEY FROM THE PRACTICE OF LAW

[¶1]    **This matter** came before the Court upon a "Report and Recommendation for Suspension," filed herein October 29, 2013, by the Board of Professional Responsibility for the Wyoming State Bar.   After a careful review of the Board of Professional Responsibility's Report and Recommendation for Suspension, Respondent's "Appeal; Response to Report and Recommendation; Appeal and Request that the Court Calendar the Matter for Briefs and Argument Pursuant to Section 21(c)(iv) of the Disciplinary Code," and the file, this Court first finds that Respondent's appeal and request for briefing and argument should be denied.  Pursuant to Section 21(c)(i), "[a] response shall state explicit reasons for the exceptions to the report together with a brief prepared in accordance with Rule 7.01, W.R.A.P."  The response filed herein does not comply with subsection (c)(i), so this Court finds that the appeal and request for briefing and argument should be denied.

[¶2]    Second, this Court finds that the Report and Recommendation for Suspension should be approved, confirmed and adopted by the Court; and that the Respondent, William D. Bagley, should be suspended from the practice of law for a period of ninety (90) days.  It is, therefore,

[¶3]    **ORDERED** that Respondent's Appeal and Request that the Court Calendar the Matter for Briefs and Argument Pursuant to Section 21(c)(iv) of the Disciplinary Code be, and hereby is, denied; and it is further

[¶4]   **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Suspension, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶5]   **ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the Report and Recommendation for Suspension, Respondent William D. Bagley shall be, and hereby is, suspended from the practice of law for a period of ninety (90) days, beginning December 16, 2013; and it is further

[¶6]   **ORDERED** that Respondent shall comply with Section 22 of the Disciplinary Code for the Wyoming State Bar.  That Section governs the duties of disbarred and suspended attorneys; and it is further

[¶7]   **ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, William D. Bagley shall reimburse the Wyoming State Bar the amount of $5,831.92, representing the costs incurred in handling this matter, as well as pay an administrative fee of $500.00, by paying the total amount of $6,381.92 to the Clerk of the Board of Professional Responsibility on or before April 1, 2014; and it is further

[¶8]   **ORDERED** that, pursuant to Section 4(a)(iv) of the Disciplinary Code for the Wyoming State Bar, this Order Suspending Attorney from the Practice of Law, along with the incorporated Report and Recommendation for Suspension, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶9]   **ORDERED** that the Clerk of this Court shall docket this Order Suspending Attorney from the Practice of Law, along with the Report and Recommendation for Suspension, as a matter coming regularly before this Court as a public record; and it is further

[¶10]  **ORDERED** that the Clerk of this Court cause a copy of the Order Suspending Attorney from the Practice of Law to be served upon Respondent William D. Bagley.

[¶11]  **DATED** this 4th day of December, 2013.

> **BY THE COURT:**
>
> /s/
>
> **MARILYN S. KITE**
> **Chief Justice**

D-13-0007

BEFORE THE SUPREME COURT
OF THE STATE OF WYOMING

IN THE SUPREME COURT
STATE OF WYOMING
FILED

OCT 2 9 2013

*Carol Thompson*
CAROL THOMPSON, CLERK

| | |
|---|---|
| *In the matter of* | ) |
| *WILLIAM D. BAGLEY,* | ) |
| *WSB # 4-0956,* | )      *WSB No. 2011-133* |
| | ) |
| *Respondent.* | ) |

## REPORT AND RECOMMENDATION FOR SUSPENSION

THIS MATTER having come for hearing on the 30th day of August, 2013, at the Wyoming State Bar Office, 4124 Laramie Street, Cheyenne, Wyoming, before the Board of Professional Responsibility, and the Wyoming State Bar appearing by and through Mark W. Gifford, Bar Counsel, and Respondent appearing in person, pro-se, and the Board having heard the testimony of witnesses and having reviewed the exhibits received into evidence at the hearing, and being fully advised in the premises, FINDS, CONCLUDES and RECOMMENDS:

### FINDINGS OF FACT

1.      Respondent has been licensed to practice law in the State of Wyoming since 1964, and practices in Cheyenne, Wyoming.

2.      In 2009, Respondent filed a petition to probate the estate of Cheyenne resident Walter R. Roberts, Jr., deceased, in the First Judicial District Court, Laramie County, Wyoming (hereinafter, "the Roberts probate"). The decedent died in November 2009 from injuries sustained in an automobile accident. The decedent was survived by five adult children, all of whom resided out of state except for decedent's son, Brandon, who resided in a house owned by the decedent in Cheyenne, Wyoming (hereinafter, "the Roberts house"). Other assets of the estate included cash, personal effects and a recreational vehicle.

3. As the sole heir residing in Wyoming, Brandon Roberts had first priority to serve as personal representative of his father's estate. Respondent, however, deferred to the wishes of the other heirs and petitioned for the appointment of the decedent's brother, Juan Roberts, as personal representative. As Juan Roberts resided in Ohio, and given the requirement of Wyoming law that someone serving as personal representative of an estate be a Wyoming resident, Respondent petitioned for the appointment of himself as co-personal representative, along with Juan Roberts. An order appointing Juan Roberts and Respondent to serve as co-personal representatives was entered January 5, 2010.

4. At the time Respondent established the Roberts probate, he failed to do the following:

   a. Respondent failed to provide for a personal representative's bond as required by W.S. § 2-3-102, and failed to obtain the heirs' waiver of such requirement.

   b. Respondent failed to publish a notice of probate once a week for three weeks as required by W.S. § 2-7-205 et seq.

   c. Respondent failed to file an affidavit of mailing of notice of probate pursuant to W.S. § 2-7-206(b).

   d. Respondent failed to inform Juan Roberts of the requirement that a timely inventory and appraisal be filed.

5. Though Respondent was a fiduciary, Respondent failed to take reasonable steps, such as opening an estate checking account on which Respondent's signature was required, at the outset in order to guard against misappropriation of estate funds.

6. During 2010, Respondent brought an action to evict Brandon Roberts from the Roberts house. Respondent billed and received payment for these services from Juan Roberts,

2

in violation of the requirements of W.S. §§ 2-7-804(b) and 2-7-805(a) that all such fees be approved by the probate court.

7. During the early months of 2010, Brandon Roberts informed Respondent that his uncle, Juan Roberts, had received insurance proceeds belonging to the Roberts estate. Respondent failed to take timely action on this information, or to otherwise attend to his duties as co-personal representative and counsel for the Roberts probate.

8. On July 8, 2010, Respondent wrote to Juan Roberts, Respondent's co-personal representative, and told him, "We should now proceed immediately with the estate inventory and probate process." Respondent wrote to Juan Roberts again four months later, on November 24, 2010, telling him, "Unless we get this matter tracking in the next two weeks it will be necessary that I withdraw." It was not until December 2010 that Juan Roberts provided Respondent with a rudimentary inventory for the estate.

9. Respondent failed to complete the administration of the estate within one year as required by W.S. § 2-7-801(c), or to obtain property insurance. Had he done so, substantial expenses for roofing and siding repairs to the house following a hail storm in July 2011 would have been avoided.

10. Respondent sent Juan Roberts a copy of a letter dated March 23, 2011, asking for more information regarding the inventory. Respondent wrote again several weeks later, telling Juan Roberts, "I feel that it is necessary for me to withdraw unless we get something going in the next 20 days." Finally, in June 2011, Respondent wrote to Juan Roberts and the heirs and said, "Perhaps I should be working with Brandon, because he seems to be the only heir with a real interest in what is going on." Respondent threatened to withdraw from the case in 14 days.

3

11.    In July 2011, the Roberts house sustained damage to the roof and siding as the result of a hailstorm.

12.    In July 2011, Respondent wrote to Geico (at Brandon's urging) inquiring about insurance proceeds relating to the auto accident in which Walter R. Roberts Jr., the decedent, was killed in November 2009. Brandon had first told Respondent about the insurance in the early months of 2010, but Respondent failed to follow up at that time. By the time Respondent did inquire (more than a year later), Juan Roberts, Respondent's co-personal representative, had received the insurance proceeds and spent them, paying most of the money to himself and four of the five heirs, excluding Brandon.

13.    On August 23, 2011, Respondent wrote to Juan Roberts and Yolanda McGhee, one of the heirs, and told them the money needed to be accounted for and that Respondent needed to have an accounting to file with the Court.

14.    On August 24, 2011, Respondent filed an "Amended Petition and Report" in the Roberts probate in which Respondent disclosed the payment to Juan Roberts of more than $7,500, the payment to Respondent of $1,350 in legal fees, and unauthorized distributions to four of the five heirs. With the amended petition, Respondent was attempting to convert the Roberts probate to a summary probate, available to estates with less than $150,000 in assets. However, such a summary proceeding is only available where all of the heirs are petitioners, and the only remedy is distribution of the estate. In this case, Respondent was the only petitioner, and the amended petition sought an order allowing sale of the house and awarding attorney's fees, relief which is unavailable under Wyoming's summary probate statute, W.S. § 2-1-105.

15.    In September 2011, Brandon Roberts complained to Bar Counsel about Respondent's handling of the Roberts probate. Respondent responded to the complaint on September 16,

4

2011, telling Bar Counsel that if Respondent could obtain an accounting for the Geico insurance proceeds within 10 days, Respondent would be willing to complete the probate. Otherwise, Respondent would ask the Court for leave to withdraw.

16. Upon receipt of a copy of Brandon Roberts' complaint (which was brought more than 20 months after the Roberts probate was opened), Respondent began to attend to the Roberts estate. Respondent discovered that the Roberts house was in need of repairs before it could be listed for sale (largely due to the July 2011 hail storm), and the recreational vehicle had been removed from Wyoming and taken to Ohio.

17. On September 27, 2011, Respondent wrote to the heirs and Juan Roberts and asked for a valuation on the motorhome and asked again for an accounting.

18. On December 20, 2011, Respondent wrote to the heirs and Juan Roberts and told them that if Respondent did not receive the accounting and other information by the end of the month, Respondent would withdraw from the case.

19. Respondent received a response from Juan Roberts dated December 29, 2011, enclosing an "accounting" which showed receipts into the estate of $31,968.24, and money paid out in the amount of $30,241.87 as follows:

| | |
|---|---|
| Beneficiaries | $16,000.00 |
| Attorney Fees | 1,385.00 |
| Employees | 2,248.44 |
| Expenses | 7,923.85 |
| Utilities | 2,344.65 |
| Supply Stores | 273.93 |
| Miscellaneous | 66.00 |
| Total paid out | $30,241.87 |

5

20. The "accounting" submitted by Juan Roberts told Respondent (1) Juan Roberts had made payments to himself totaling $6,853.42, (2) there was $1,726.37 left in the estate and (3) Juan Roberts was owed an additional $4,791.71.

21. On January 9, 2012, ten days after the estate's second birthday, Respondent wrote to Juan Roberts and again demanded an accounting no later than January 25, 2012. Juan Roberts responded with a letter dated January 19, 2012, to which was attached a more detailed accounting. Contrary to the accounting provided with his December 29, 2011, letter, the new accounting showed that Juan Roberts had received funds belonging to the estate totaling $32,048.54 and had made disbursements totaling $30,549.78, including $20,000 Juan had distributed to himself and four of the five heirs (excluding Brandon) in July and August 2010. The new accounting showed that Juan Roberts had made payments to himself totaling $8,094.76. Despite Respondent's involvement both as a fiduciary and as an officer of the court, Respondent did not act promptly to bring these improprieties to the Court's attention.

22. On January 30, 2012, the Court issued an Order to Show Cause to Respondent and Juan Roberts to explain why administration of the estate had not been completed.

23. On February 24, 2012, Respondent filed two documents – the first since the estate was opened more than two years before. One was a response to the Order to Show Cause in which Respondent advised the Court for the first time (though Respondent had known about it for two months at that point) that improper distributions had been made. The other was an "Amended Petition: Report of Co-Administrators and Application for a Decree Pursuant to Wyo. Stat. § 2-1-205." In that document Respondent represented to the Court (among other things) that probate was not necessary and that "the original of this Notice of Application is being published once a week for two (2) consecutive weeks in compliance with W.S. 2-1-205." No such

6

publication was ever made. Respondent attached to the "Amended Petition" portions of the two accountings Respondent had received from Juan Roberts, but failed to call the discrepancies between the two accountings or the full extent of the improprieties contained therein to the Court's attention. Respondent failed to serve either the "Response to Order to Show Cause" or the "Amended Petition" on the heirs.

24. Upon review of the Court file, Bar Counsel sent Respondent a letter dated April 17, 2012, in which Bar Counsel pointed out several inadequacies and irregularities in Respondent's handling of the estate. Bar Counsel cautioned Respondent against proceeding with a summary distribution, which under Wyoming law Respondent could not do without all the heirs joining in the petition. Bar Counsel criticized Respondent's action in billing the estate and receiving payment of fees without Court approval. Bar Counsel demanded that Respondent act promptly to get the estate concluded.

25. On May 16, 2012, Bar Counsel wrote to Respondent and expressed concern about Respondent's persistence in proceeding with a summary probate and Respondent's impropriety in receiving fees from the Roberts probate without court approval. In response, Respondent wrote a letter dated May 29, 2012, in which Respondent indicated that he would start publication of a notice to creditors (nearly 30 months after the probate was opened), that he had repaid the fees received, and had opened a new checking account for the estate that would, according to Respondent, "be a source for funds to pay for advertising, filing the appraisal and expenses needed for preservation of the property." Respondent requested that Bar Counsel hold off on filing any disciplinary charges "until you see how quickly and successfully we can close this probate proceeding."

7

26. In early June 2012, Respondent opened a checking account for the estate with Central Bank and Trust in Cheyenne, funding it with a $1,385.00 deposit which represented a refund of the fees Respondent had received, without Court approval, from the estate. The estate checking account constituted a lawyer trust account within the meaning of Rule 1.15 of the Wyoming Rules of Professional Conduct. At no time did Respondent attempt to recover from Juan Roberts any remaining estate fund in Juan Roberts' possession.

27. On June 6, 2012, Respondent filed an Estate Inventory and an unverified Report of Appraisal.

28. On June 13, 2012, more than 30 months after the estate was opened, Respondent filed Proof of Publication of the Notice of Probate and a Verified Interim Report to the Court and Accounting.

29. When Bar Counsel checked the probate file in early September 2012 (having heard nothing from Respondent in the interim), Bar Counsel discovered that nothing further had been filed since June 2012. On September 7, 2012, Bar Counsel wrote to Respondent and said, "Frankly, this is an embarrassment. Three months has passed since you assured me you would get the probate wrapped up post-haste. Other than the few things you filed the first half of June, it appears nothing has been done."

30. Apparently prompted into action by Bar Counsel's letter, Respondent filed a motion on September 12, 2012, to allow Respondent to enter into a listing agreement for the Roberts house. Respondent signed a listing agreement with Number One Properties on September 12, 2012, and received an acceptable offer of $75,700.00 the next day.

31. The sale of the Roberts house closed on October 3, 2012. After deductions, including $3,404.15 for roof repair and $1,120.00 for siding repair, the net proceeds to the estate

8

were $61,612.19. Respondent deposited said funds into the estate checking account on October 3, 2012.

32.    On October 23, 2012, Respondent filed a "Report, Accounting and Petition for Partial Distribution" and served the heirs with a notice that a hearing on the petition would be held on November 6, 2012. In the Report, Respondent proposed a $4,000.00 distribution to Brandon Roberts. According to a letter Respondent later sent to Bar Counsel dated January 31, 2013, "Brandon Roberts unexpectedly appeared at the scheduled [November 6, 2012] hearing, resulting in the need to reset the Petition for Partial Distribution for a hearing before the Judge. To expedite matters, I elected to abandon my attempt to a partial distribution and to proceed with a Final Report and Accounting requesting a regular hearing before Judge Campbell for the final distribution."

33.    The documentation submitted with the October 23, 2012, final report indicated that Juan Roberts had received funds belonging to the Roberts estate in the amount of $34,354.69 but had disbursed only $30,491.98, including $7,024.33 paid to Juan Roberts himself. The report did not call to the Court's attention the fact that an undisbursed amount of $3,934.71 ($34,354.69 minus $30,419.98) had apparently been kept by Juan Roberts, in addition to the $7,024.33 Juan Roberts had paid to himself.

34.    On November 8, 2012, Respondent filed an unverified "Final Report, Accounting and Petition for Final Distribution." In that document, Respondent indicated that Juan Roberts was the custodian of assets belonging to the estate in the amount of $34,354.69, consisting of cash at American National Bank ($3,990.02), "insurance proceeds" ($6,632.69) and "Geico insurance proceeds" ($23,731.98). The accounting Respondent attached to the Final Report indicated that $30,419.98 was paid out by Juan, including $16,000 to four of the five heirs, $1,385 to

9

Respondent and more than $7,000 to Juan Roberts himself. Again, Respondent did not account for or even specifically identify the $3,934.71 discrepancy between what was received by Juan Roberts and what he paid out.

35. Similarly, the November 8, 2012, Final Report indicated that Respondent was the custodian of $62,997.19 in cash, of which Respondent had expended $2,204.78 on expenses of administration, leaving a cash balance of $60,792.41. Respondent proposed cash distribution to the heirs as follows:

| | | |
|---|---|---|
| Henry Roberts | | $10,627.08 |
| Rudolph B. Roberts | | 10,627.08 |
| Walter R. Roberts, III | | 10,627.08 |
| Brandon D. Roberts | | 14,627.08 |
| Yolanda McGee | | 4,627.08 |
| | Total | $51,135.40 |

Respondent also proposed that ordinary fees of $2,671.09 and extraordinary fees of $1,490.00, for a total of $4,161.09, be paid to Respondent. Thus, Respondent's Final Report requested the Court's authorization to pay out a total of $55,296.49 cash ($51,135.40 to the heirs plus $4,161.09 to Respondent), plus transfer of a motor home worth $6,000 to Yolanda McGee. Respondent's Final Report did not indicate what was to happen to the other $5,495.92 in cash in his possession ($60,792.41 minus $55,296.49).

36. The "Order Approving Final Report and Accounting and Decree of Distribution" Respondent prepared for Judge Campbell, which he signed and filed November 28, 2012, included specific findings by the Court that (1) "each and all statements made in the said Final Report and Accounting and Petition for Distribution are true and correct;" (2) "the conduct of the Co-Administrators in the administration of this estate as reflected in said Report is in accordance with law and the prior orders of this Court;" (3) "the requested attorney fees and costs should be

10

allowed;" and (4) "the administration of said estate is fully and finally concluded and that said estate is ready for the *proposed distribution* . . ." (italics supplied). The Court ordered that "all assets of this estate now in the hands of the Co-Administrators be, and the same hereby are, distributed equally to the heirs *according to the approved Schedule of Distribution* . . . (italics supplied).

37. After the order was entered, Respondent distributed cash as follows:

| | | |
|---|---|---|
| Henry Roberts | | $11,827.26 |
| Rudolph B. Roberts | | 11,827.26 |
| Walter R. Roberts, III | | 11,827.26 |
| Brandon D. Roberts | | 15,827.27 |
| Yolanda McGee | | 5,827.26 |
| Bagley Law Office | | 4,161.09 |
| | Total | $61,297.40 |

38. Respondent then filed a "Petition for Final Discharge of Co-Administrators" in which Respondent represented to the Court that he had made "full and complete distribution of all assets" of the estate, "in full and complete compliance with the Order of this Court entered on the 28th day of November, 2012." That statement was untrue.

39. The documents filed with the Final Report also indicated that the checking account opened by Respondent for the Roberts estate incurred $33.00 in bank service charges. These charges were incurred because Respondent allowed the account to become overdrawn.

40. On January 7, 2013, more than three years after it was opened, the Court entered its Decree of Final Discharge closing the estate.

41. Bar Counsel's review of the court file in the Roberts probate after final distributions were made revealed the foregoing discrepancies, along with a difference between the amount of distributions the court approved and the amount paid out by Respondent. Respondent

11

did not personally benefit from these distribution discrepancies, which he explained as a math mistake caused by having allowed one of the heirs to keep the recreational vehicle in lieu of a cash payment. The resulting adjusted distributions were not reported to nor approved by the probate court.

42. Other discrepancies included that in early September 2012 Respondent allowed the Central Bank and Trust account to become overdrawn and deposited $500.00 of Respondent's own funds to cover the overdraft. The estate checking account incurred $33.00 in overdraft charges as a result.

43. It does not appear that Respondent ever collected the remaining estate funds being held by Juan Roberts, which Respondent reported to the Court to be $1,726.77 in the Verified Interim Report Respondent filed June 13, 2012. Prompt action on Respondent's part to obtain those funds from Juan Roberts would have avoided the overdraft in the Central Bank and Trust account, and would have provided more than adequate funds to pay for the cost of preparing the house for sale. Those funds were never recouped by the estate.

44. Similarly, Respondent did nothing to preserve the value of the motor home and never obtained an appraisal as required by the probate code. The motor home, like the estate checking account, was property belonging to a client or third person which Respondent had a duty to safeguard.

## CONCLUSIONS OF LAW

45. Bar Counsel has proved by clear and convincing evidence that Respondent's conduct as set forth above violated the following rules of the Wyoming Rules of Professional Conduct:

    a.    Rule 1.1, which requires a lawyer to provide competent representation.

b. Rule 1.3, which requires a lawyer to act with reasonable diligence and promptness in representing a client.

c. Rule 1.4, which requires a lawyer to keep the client reasonably informed about the status of the matter and to promptly comply with reasonable requests for information.

d. Rule 1.15, which requires that a lawyer safeguard property belonging to clients or others.

e. Rule 3.1(c), which provides that the signature of an attorney constitutes a certificate by him that he has read the court document and that to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact.

f. Rule 3.3, which requires candor toward the tribunal.

<u>Determination of the Appropriate Sanction for Respondent's Misconduct</u>

46. The Board having determined by a majority of a quorum that Respondent committed numerous violations of the Rules of Professional Conduct proceeded pursuant to Section 19(c)(i) of the Disciplinary Code of the Wyoming State Bar to receive written evidence relevant to the appropriate sanction for Respondent's conduct.

47. In determining an appropriate sanction, the Board is guided by the American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") which state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."

13

48. ABA **Standard 3.0** lists four factors to be considered in imposing a sanction after a finding of lawyer misconduct:

(a) the duty violated;
(b) the lawyer's mental state;
(c) the potential or actual injury caused by the lawyer's misconduct; and
(d) the existence of aggravating or mitigating factors.

### The First Factor: The Duty Violated

49. Much of Respondent's conduct falls within **Standard 4.0**, "Violations of Duties Owed to Clients." **Standard 4.5** sets forth the guidelines for lawyers who display a lack of competence in violation of Rule 1.1:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to provide competent representation to a client:

4.51 Disbarment is generally appropriate when a lawyer's course of conduct demonstrates that the lawyer does not understand the most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to the client.

4.52 Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent and causes injury or potential injury to a client.

4.53 Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer:
   (a) demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or
   (b) is negligent in determining whether he is she is competent to handle a legal matter and causes injury or potential injury to a client.

4.54 Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether he or she is competent to handle a legal matter, and causes little or no actual or potential injury to a client.

50. Violations of Rules 1.3 (diligence) and 1.4 (communication with clients) fall within **Standard 4.4**:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to provide competent representation to a client:

14

4.41 Disbarment is generally appropriate when:
    (a)    a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
    (b)    a lawyer knowingly fails to perform services for a client and causes injury or potentially serious injury to a client;
    (c)    a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

4.42 Suspension is generally appropriate when:
    (a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
    (b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

4.43 Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

4.44 Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client.

    51.    **Standard 4.1** sets forth the guidelines for lawyers who fail to safeguard client property in violation of Rule 1.15:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving the failure to preserve client property.

4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to the client.

4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

4.13 Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

4.14 Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.

    52.    Violations of Rule 3.1(c) fall within the **Standard 6.2**, "Abuse of the Legal Process."

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious claim, or failure to obey any obligation under the rules of the tribunal except for an open refusal based on an assertion that no valid obligation exists:

6.21    Disbarment is generally appropriate when a lawyer knowingly violates a court order or a rule with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

6.22    Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

6.23    Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

6.24    Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.

53.    Violations of Rule 3.3 fall within **Standard 6.1**, "False Statements, Fraud, and

Misrepresentation."

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit, or misrepresentation to a court:

6.11    Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

6.12    Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

6.13    Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer is negligent either in determining whether the statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to

16

the legal system, or causes an adverse or potentially adverse effect on the legal proceeding.

6.14 Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance of neglect in determining whether the submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no actual or potential injury to a party, or causes little or no adverse or potentially adverse effect on the legal proceeding.

### The Second Factor: The Lawyer's Mental State

54. The preamble to the ABA Standards includes the following discussion regarding mental state:

> The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

### The Third Factor: The Potential Or Actual Injury Caused By The Lawyer's Misconduct

55. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

### The Fourth Factor: The Existence Of Aggravating Or Mitigating Factors

56. ABA **Standard 9.0**, entitled "Aggravation and Mitigation," provides as follows:

17

9.1　*Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2　*Aggravation*

   9.21　*Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

   9.22　*Factors which may be considered in aggravation.* Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.

9.3　*Mitigation*

   9.31　*Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

   9.32　*Factors which may be considered in mitigation.* Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
   (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
   (2) the chemical dependency or mental disability caused the misconduct;

18

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses

9.4 *Factors Which Are Neither Aggravating nor Mitigating*

The following factors should not be considered as either aggravating or mitigating:

(a) forced or compelled restitution;

(b) agreeing to the client's demand for certain improper behavior or result;

(c) withdrawal of complaint against the lawyer;

(d) resignation prior to completion of disciplinary proceedings;

(e) complainant's recommendation as to sanction; and

(f) failure of injured client to complain.

57. The Board finds the following mitigating factors: (1) absence of a prior disciplinary record and (2) absence of a dishonest or selfish motive.

58. The Board finds the following aggravating factors: (1) substantial experience in the practice of law; (2) a pattern of misconduct; (3) multiple offenses; (4) vulnerability of the victim; and (5) refusal to acknowledge the wrongful nature of his conduct.

## RECOMMENDATION

The Board recommends that the Court enter an order:

1. Administering a ninety (90) day suspension of Respondent's right to practice law in Wyoming, pursuant to Section 4(a)(ii) of the Disciplinary Code for the Wyoming State Bar, subject to reinstatement as provided in Section 24 of the Disciplinary Code for the Wyoming State Bar, for violating Rules 1.1, 1.3, 1.4 1.15, 3.1(c) and 3.3 of the Rules of Professional Conduct for Attorneys at Law;

19

2.     Directing Respondent to undergo no less than three (3) hours of continuing legal education in probate law prior to Respondent resuming his probate practice;

3.     Ordering Respondent to pay the $500 administrative fee required by Section 26(e) of the Disciplinary Code for the Wyoming State Bar, to the Wyoming State Bar, on or before April 1, 2014; and

4.     Ordering Respondent to reimburse the Wyoming State Bar for costs incurred in this matter in the amount of $5,831.92, as supported by the attached Affidavit of Costs and Expenses, on or before April 1, 2014.

RESPECTFULLY SUBMITTED this 28th day of October, 2013.

Jenifer E. Scoggin, *Chair*
BOARD OF PROFESSIONAL RESPONSIBILITY
WYOMING STATE BAR

20